ADAMS, Justice.
Thurman Thomas appeals from a summary judgment entered in favor of Phyllis Hamilton and Hotel Services, Inc., d/b/a Econo Lodge. Thomas contends that his claims against Phyllis Hamilton and Hotel Services, alleging malicious prosecution and false imprisonment, should have been submitted to a jury. We disagree and we affirm.
Thomas worked for a company known as Old Heritage, which published a business telephone directory for several counties. Pursuant to an agreement between Old Heritage and Econo Lodge, representatives of Old Heritage would stay free in Econo Lodges in exchange for free advertisement in the directory. The agreement provided that the representatives would be furnished free rooms; however, room service, telephone, and food .charges were not included.
Thomas stayed in the Econo Lodge managed by Phyllis Hamilton in September 1989 and, on September 19, 1989, he attempted to check out of the hotel without paying approximately $150 in accumulated telephone charges. Thomas contends that he had spoken with the manager of Old Heritage and had been assured that Old Heritage would take care of the charges and would deduct the cost from his next commission check. The manager of Old Heritage, Hank Dissen, contends that Thomas assured him that Thomas would take care of the telephone charges and that Thomas refused Dissen’s offer to deduct the cost of the charges from Thomas’s check. Although there appears to have been a misunderstanding between Thomas and Dissen over the way in which the charges would be taken care of, there is no dispute that the agreement between Econo Lodge and Old Heritage did not obligate Econo Lodge to absorb the cost of the telephone calls made by Thomas during his stay there.
On the day that Thomas was checking out of the hotel, he informed the desk clerk that Old Heritage would be taking care of his telephone charges. However, Dissen had contacted Ms. Hamilton the evening before Thomas’s checkout and had told her not to let him check out without settling his account with regard to the charges. Dis-sen told Hamilton that Thomas would be paying for his own telephone charges because that had been his understanding with regard to the previous conversation with Thomas. At any rate, the desk clerk informed Thomas that he would have to pay for the telephone bill before leaving the hotel. Thomas tried unsuccessfully to reach Dissen and then attempted to leave without settling the account. The police were called and Thomas was later arrested and charged with theft of services. Thomas stated the following in his deposition:
“Q. Let’s back up. I’m with you on the story through ‘she said, “You’ve got to pay for them.” ’ You said, ‘He told me they would pay for them.’ She told you that he had called the night before and said, ‘No, don’t let him leave without paying for them.’ What happened next?
“A. I told her to call Phyllis, the manager.
“Q. Did she call her?
“A. She called her.
“Q. What happened?
“A. Phyllis refused to speak to me.
“Q. You wanted to speak to her on the phone?
“A. Yes.
“Q. Do you know why she refused to talk to you?
“A. No, I have no earthly idea.
“Q. What was said then; do you know?
“A. She said Phyllis told her over the phone not to let me leave until I paid for the calls. And I told her, I said, ‘Well, Hank told me to check out and go to DeKalb County.’ *1040 And I said, T’m going to DeKalb County.’ I said, ‘Y’all can settle it later.’ So I just left out the back door and I went to get in my car. And she followed me outside to try and detain me until the police come. And the police walked up and asked me to step back on the inside.
“Q. Did you hear her call the police from inside?
“A. Oh, she called the police before I left out of the lobby.
“Q. Did you hear her calling them, or had you already walked away at that point?
“A. She said, T’m going to call the police.’ She was dialing the phone. And I just walked on to my car. And the police drove up. And then she followed me outside.
“Q. Why would you walk to your car after — if you knew she was calling the police instead of staying in?
“A. Well, why should I stay there, because the arrangements was [sic] already made with Hank that the calls was [sic] going to be taken care of out of my commission money. And he had told me a certain time to be in DeKalb County.
“Q. So you were in a hurry to get out of there?
“A. I was just trying to go on and do my work.
“Q. Let’s talk about what happened in the back of the hotel. Were you out at your car when the police arrived?
“A. Oh, yeah. I had cranked up my car, and I was getting ready to go to DeKalb County.”
It is clear from the record that although there may have been a misunderstanding between Dissen and Thomas regarding who would actually write the check for the telephone charges accumulated by Thomas, it is equally clear from the record that Econo Lodge had a right to expect its money. Ms. Hamilton had been informed by Dissen that Thomas would be responsible for the charges and had been told not to allow him to leave without paying for them. Even if Dissen had misinformed Hamilton with regard to the arrangements between Dissen and Thomas, Hamilton had every right to rely on Dissen’s statement to her that Thomas would be paying his own bill. She, therefore, would be justified in telephoning the police when he attempted to leave the premises without paying for the charges. Thomas was thereafter indicted and charged with theft of services. He was acquitted.
Clearly, the evidence was sufficient for Hamilton to assume that Thomas was attempting to leave the Econo Lodge without paying his bill. The defendants made a prima facie showing that Ms. Hamilton had had probable cause to make the charge. The plaintiff had the burden of rebutting that prima facie showing. However, he presented nothing to establish a lack of probable cause; the trial court correctly entered a summary judgment as to Thomas’s malicious prosecution claim. See Eidson v. Olin Corp., 527 So.2d 1283 (Ala. 1988). Because there was probable cause to charge Thomas, his claim for false imprisonment must also fail. Therefore, the summary judgment was also proper in that regard.
AFFIRMED.
HORNSBY, C.J., and STEAGALL, KENNEDY and INGRAM, JJ., concur.